SANDERSON's Ex'rs. *vs.* MARKS.—June, 1827.

A surety in a replevin bond is not a competent witness for the plaintiff in replevin.

The bill of sale of a sheriff for chattels levied on and sold by him, is improper testimony in itself, however it may be considered, accompanied by proof of the sheriff's authority to sell the property it professed to convey.

All the testimony offered by the plaintiff, who sued as executor, being rejected by the court as incompetent, and the defendant having given in evidence declarations of the testator, tending to prove the plaintiff's claim, it is a proper case for the jury to consider and decide, and the court have no right to instruct the jury that the plaintiff was not entitled to recover.

The declaration in replevin should not include any property not taken under the writ of replevin.

If a father, as natural guardian of his child, was in possession of a slave at the time of a gift of the slave by the owner to the child, it was such a possession as was required by the act of 1763, ch. 13, s. 3, to make it a valid gift, and passed the property without any further delivery by the donor.

APPEAL from *Saint-Mary's* County Court. This was an action of replevin for sundry goods and chattels, and a negro boy named *Jack*. The replevin bond was executed on the 23d of October 1821, by *Gerard N. Causin,* and others, to the defendant, (now appellee,) for prosecuting the writ of replevin in the name of the plaintiffs' testator. The defendant pleaded, 1. Property in himself, and 2. Property in one *Sophia Marks.* Issues were joined on the general replications to those pleas. The death of *Sanderson* was suggested, and the plaintiffs appeared as his executors, exhibiting letters testamentary to them granted, &c.

1. At the trial the plaintiffs offered to read in evidence a bill of sale from *John Stevenson,* sheriff of *Baltimore* county, to *Michael Sanderson,* (the plaintiffs' testator,) executed on the 12th of October 1819, for sundry goods and chattels, and a negro boy named *Jack,* stated to have been seized by *Stevenson* as the property of *William Marks,* under an execution issued

at the suit of *William Riley* against the lands, &c. of *Marks,* and by *Stevenson* sold at public auction to *Sanderson* for $512. The bill of sale appeared to have been acknowledged by *Stevenson* before a justice of the peace for *Baltimore* county, and recorded the same day among the records of that county. To the admissibility of which the defendant objected; and the Court, [*Key*, and *Plater*, A. J.] were of opinion that it was inadmissible, and refused to permit it to be read in evidence to the jury. To which opinion of the court the plaintiffs excepted.

2. The plaintiffs then read in evidence the following deposition, (admitted to be read so far as the same was competent testimony,) viz. "*G. N. Causin*, attorney for the plaintiffs, makes oath, that he believes the plaintiffs cannot proceed to the trial of the said cause with justice to themselves, at this term; that *John Stevenson* of *Baltimore* county, is a competent witness in said cause, and he has reasonable expectation that his attendance can be procured by the next term; that he believes the said witness will prove the plaintiffs' testator to have maintained through life a fair and upright character; that at times he, (the plaintiffs' testator,) was in the habit of vaunting of his benevolent actions; and that the boy *Jack*, mentioned in the declaration, is the same boy mentioned in the bill of sale filed in the cause from *John Stevenson*, sheriff of *Baltimore* county, to the plaintiffs' testator." The plaintiffs further gave evidence by *Gerard N. Causin*, that he heard the defendant, after the said negro, in the declaration mentioned, was taken by virtue of the replevin issued in this cause, say that it was strange that the plaintiffs' testator should replevy the said negro; for although he had bought the said negro, yet afterwards he had given him to his, the defendant's daughter *Sophia*. The defendant then gave in evidence the following deposition, taken by consent of the parties in this cause, and admitted to be read in evidence, so far as the same was competent, viz. "*Aquila Carroll*, of *Baltimore* county, deposeth and saith, that he well knew *Michael Sanderson*, in his lifetime, and has heard him say that he had set *Marks* on his legs, that they had taken all of his property even to a bed, and that they had taken it for house rent, or debts, but for which he cannot now recollect;

and that he had given all the property, and a negro boy which formerly belonged to *Marks,* the defendant, and which he had bought at a sale of *Marks'* property by the sheriff of *Baltimore,* to *Marks'* daughter *Sophy,* and that he gave them to his daughter to prevent his creditors from again taking them; and that this statement he had frequently heard him make." To interrogatories put to the witness by the defendant he answered, 1. That the above conversation took place shortly after the occurrence took place. 2. *Sanderson* said that the boy and property of *Marks,* seized and sold by the sheriff, was bought and paid for by him. 3. *Sanderson* said be had bought the property for the sake of *Marks'* family, but said nothing about the delivery. 4. *Sanderson* did not say he was in debt to *Marks.* 5. *Sanderson* had no family or any relations, to the knowledge of the witness—He believed he had relations in *Europe.* 6. He has known *Marks* for 15 or 20 years. 7. He cannot say that at the time of the conversation before mentioned with *Sanderson* the negro boy and property were in possession of *Marks,* and used by him then and afterwards. 8. He does not know how long *Marks* remained in *Baltimore* after the sale of the boy and property. He does not think it was many months. *Marks'* daughter was between the age of 15 and 20 years, and then was living with her father. 9. He does not know that a great intimacy existed between *Sanderson* and *Marks.* The defendant then offered in evidence the replevin bond filed in this case; and it was admitted that *Gerard N. Causin,* in the said bond mentioned, and the said *Gerard N. Causin,* who gave testimony as mentioned herein, was one and the same person. The defendant then prayed the court to instruct the jury, that the testimony of *Causin* was illegal and not to be regarded by them; of which opinion the court were, and so instructed the jury. To which the plaintiffs excepted.

3. The plaintiffs then prayed the court to instruct the jury, that if from the testimony they should be of opinion that the plaintiffs' testator purchased the said boy *Jack* at the sale of the defendant's property by *John Stevenson,* sheriff of *Balti-more* county, that then, to make a gift of said boy from *San-*

*derson* to *Sophia Marks* good and valid in law, the same must be accompanied by a delivery of possession, or established by a bill of sale from *Sanderson* to *Sophia Marks*, acknowledged and recorded agreeably to law. But the court refused to grant the said prayer; but instructed the jury, that if they should be of opinion that the said negro boy was in possession of the defendant, as natural guardian to his daughter, then it was such a possession as is required by the act of assembly. To which refusal and opinion of the court the plaintiffs excepted.

4. The defendant then prayed the court to instruct the jury, that from the preceding evidence the plaintiffs were not entitled to recover the said boy in the declaration mentioned. Of which opinion the court were, and so instructed the jury. The plaintiff excepted, and the whole of the preceding formed one bill of exceptions. *Verdict* as to the *first* issue, that the property in the said goods, &c. at, &c. was not in the plaintiffs; and the same verdict as to the *second* issue. Judgment was rendered thereon for the defendant; and the plaintiffs appealed to this court.

The cause was argued before BUCHANAN, Ch. J. and EARLE, MARTIN, STEPHEN, ARCHER, and DORSEY, J.

*Magruder*, for the Appellants, contended, 1. That the bill of sale from the sheriff of *Baltimore* county ought to have been read in evidence. 2. That the court erred in not instructing the jury that if they should be of opinion from the evidence, that the plaintiffs' testator purchased the boy *Jack*, for which this action was brought, then to make a gift of said boy from the testator to *Sophia Marks* good, there must be a delivery of the property, or a bill of sale recorded, according to law. 3. That the court erred in instructing the jury that the evidence did not entitle the plaintiffs to a verdict. He referred to the act of 1763, *ch.* 13, *s.* 3.

*C. Dorsey*, for the Appellee.

EARLE, J. delivered the opinion of the Court. The dispute between the parties in this case is about the right of property

in a negro boy named *Jack.* The replevin issued for sundry other chattels, but they were not replevied by the sheriff, nor noticed by him in his return of the writ. They nevertheless very inaccurately appear in the declaration; and their caption and detention being complained of, they are embraced in the pleas filed by the defendant, and in the issues tried in the cause; These pleas and issues are, that the property in these goods and chattels, and negro boy, is in the defendant and not in the plaintiffs; and that the property in the same goods and chattels, and negro boy, is in *Sophia Marks,* the daughter of the defendant, and not in the plaintiffs. On the trial of these issues, the court below signed a bill of exceptions, which comprises four several opinions delivered by them. Two on the inadmissibility of evidence, and two on the distinct prayers of the plaintiffs and defendant. In the two first, we entirely concur with the court.

*G. N. Causin,* having been a security in the replevin bond, was certainly an incompetent witness to testify for the plaintiffs; and the bill of sale signed by the sheriff, *Stevenson,* was unquestionably improper testimony in itself, however it might have been considered, if it had been accompanied by proof of the sheriff's authority to sell the property it professed to convey.

The prayer on the part of the plaintiffs, the court refused to grant; but they expressed an opinion thereon, in which we coincide. They, in substance, instructed the jury, that if they should be of opinion the defendant, as natural guardian of his daughter, was in possession of the negro boy at the time of the gift, then it was such a possession as was required by the act of assembly to make it a good or valid gift, and passed the property to her without any further delivery by the donor.

The prayer on the part of the defendant, was answered by an instruction to the jury, "that from the preceding testimony the plaintiffs were not entitled to recover the negro boy in the declaration mentioned." All the evidence on the part of the plaintiffs had been rejected by the court, and the words *preceding evidence* can apply only to the testimony introduced into the cause by the defendant himself. This is to be found in the deposition of *Aquilla Carroll,* who deposed that he had heard *Sanderson* say, he had set *Marks* on his legs; that they

had taken all his property, even to a bed, and that they had taken it for house rent or debt, but for which, the witness could not at that time recollect; and that he had given all the property, and a negro boy, which formerly belonged to *Marks*, the defendant, and which he bought at a sale of the said *Marks's* property by the sheriff of *Baltimore*, to the said *Marks's* daughter *Sophy*, and that he gave them to the daughter to prevent his creditors from again taking them; and that this statement he had frequently heard him make. To further interrogatories on the part of the defendant, *Aquila Carroll* answered, that the conversation with *Sanderson* alluded to, took place soon after the occurrence; that *Sanderson* said the boy and property of *Marks*, seized and sold by the sheriff, were bought and paid for by him; that he bought the property for the sake of *Marks's* family, but said nothing about the delivery, and he did not say he was in debt to *Marks*. *Aquila Carroll* also answered to the defendant's interrogatories, that he had known *Marks* for fifteen or twenty years, but he could not say that at the time of the conversation alluded to, the boy and property were in the possession of *Marks*, or used by him then or afterwards; that *Marks* did not remain in *Baltimore* many months after the sale; that he did not know the year or month of the sale, and that *Marks's* daughter was then about fifteen or twenty years of age, and was living with her father; and that he had no knowledge of a great intimacy existing between *Sanderson* and *Marks*.

This testimony being before the jury, we cannot think the court were right in giving the instruction they did. Upon the facts of the purchase from the sheriff, and the gift to the daughter, depends the question, whether the plaintiffs have a right to recover the negro boy in dispute; and the proof offered of them is not of a character, it would appear, to be decided on by the court. The declarations of *Sanderson*, in reference to these points, become evidence in the cause, by the defendant's introducing and using them against his executors, and they ought to have been suffered to be considered, estimated and decided on by the jury; especially as the court had before submitted to their reflections, the question respecting the possession of the boy at the time of the gift.

JUDGMENT REVERSED, AND PROCEDENDO AWARDED.