(Decided January 23rd, 1861.)

---

# Margaret R. McKee's Administrators *vs.* Alexander McKee's Administrators.

*Parol evidence* of the seizure and sale of personal property, by a sheriff, is incompetent to show title in the purchaser, unless the *execution* under which the sale was made is produced or its absence accounted for.

Where a judgment in favor of the plaintiff is *affirmed* on the defendant's appeal, a *procedendo* will not be issued, in order to enable the defendant to avail himself of evidence which he might have produced at the trial, but did not; the Acts of 1826, ch 200, sec. 10, and 1830, ch. 186, give no power to this court to order a *procedendo* in such a case.

Appeal from the Circuit Court for Prince Georges County.

*Trover*, brought on the 14th of April 1857, by the appellees against the appellants, to recover the value of sundry negro slaves. The case was docketed by consent for the purpose of trying title to the negroes in controversy. Pleas, *non cul.* and *limitations.*

At the trial, a single exception was taken by the defendants to the ruling of the court below, (CRAIN, J.,) which, with the facts of the case, is fully stated in the opinion of this court. The verdict and judgment were in favor of the plaintiffs, and the defendants appealed.

The cause was argued before LE GRAND, C. J., BARTOL and GOLDSBOROUGH, J.

*Thos. F. Bowie* and *Thos. S. Alexander*, for the appellants:

1st. The evidence offered was clearly admissible to prove the facts of possession of the negroes in the sheriff, the seizure, and sale of them to Margaret McKee, the receipt of the purchase money from her, and the delivery of the negroes to her. These facts alone, in the absence of proof of authority to make a seizure and sale, would not be sufficient to show a transfer of any title to the negroes which was vested in the plaintiff's intestate at the time of the seizure. But his title, as attempted to be shown by the plaintiffs, was nothing more than a possession commencing *several years* anterior to 1855, which is quite consistent with the title of the wife, commencing in 1847. Since the possession, at that time, acquired by the wife, devolved, by operation of law, on the husband, and the legal presumption is, that the privity between them continued down to the period of the husband's death. Under such circumstances, in any controversy between the husband's representatives and the wife's representatives, the latter *being in possession*, the former cannot require the latter to show any better title than as evidenced by the actual possession of the wife, acquired by her in 1847. This possession gave title, (4 *H. & J.*, 68, *Owings vs. Nicholson*,) and there was no necessity, therefore, to produce the judgment and *fi. fa.*

Again, the Act of 1842, ch. 293, gives the *title to the wife* in these negroes; it gives a *separate estate,* in such cases, to the wife, and the language of the statute is the deed of settlement upon her.

2nd. The decision of the court below rests on a ground purely technical, which may be obviated, on a second trial, by the production of the writs of execution spoken of by the witness, which are now on file in this court, and as the parties damaged by the neglect of the wife's administrators, in the event of the affirmance of the judgment, are her children, who are in no wise implicated in the supposed miscarriage of the defence below, the purposes of substantial justice will be advanced by sending the cause back, under a *procedendo,* for a new trial, in the event of an affirmance on the point adjudged in the court below. *Acts of* 1826, *ch.* 200, *sec.* 10, and 1830, *ch.* 186. 2 *Md. Rep.,* 245, *Kennerly vs. Wilson.* 9 *Md. Rep.,* 83, *Harwood vs. Marshall.* 6 *Md. Rep.,* 10, *Manning & Stimpson vs. Hays. Ibid.,* 210, *Stump vs. Henry.* 12 *G. & J.,* 398, *Darnall vs. Hill.* 7 *Md. Rep.,* 367, *McTavish vs. Carroll.*

*Thos. G. Pratt,* for the appellees:

1st. The sale, by Quinn, of property belonging to Alex. McKee, could pass no title to the purchaser, unless Quinn was authorized to make such sale, and as the right of Quinn to sell in this case is claimed to be derived from writs of *fi. fa.* and *venditioni exponas,* issued by the Court of Appeals, these writs should have been produced, or their non-production accounted for, before *parol proof* could be admitted to show the authority to sell. 7 *H. & J.,* 459, *Giese vs. Thomas.* 1 *H. & G.,* 252, 256, *Sanderson vs. Marks.*

2nd. If satisfactory and legal proof had been offered to establish Quinn's right to sell, and the actual sale by him to the wife, of the negroes of her husband, sold under an execution against the husband, still the title to the negroes remained in the husband. 6 *Md. Rep.,* 381, *Turton vs. Turton.*

3rd. If the judgment is affirmed, the case cannot be sent

back under a *procedendo.* No case can be found of a *procedendo* upon an *affirmed* judgment, in favor of a plaintiff, where the record discloses no fact to show that the *judgment is wrong.*

GOLDSBOROUGH, J., delivered the opinion of this court:

This was an action of *trover,* instituted in the Circuit court for Prince Georges county, by the administrators of Alexander McKee against the administrators of his wife, Margaret McKee, who died in 1851, to recover the value of a number of negroes, which the plaintiffs claimed to have been the property of their intestate.

For the purpose of showing title in their intestate, the plaintiffs proved, that Margaret, the defendants' intestate, died in the year 1851; and her husband, Alexander, the plaintiffs' intestate, survived her and died in 1855; and then proved, by a competent witness, that for several years prior to the death of Alexander, he (the witness) knew the negroes in controversy; that he was the overseer or manager of the said Alexander two years before his death, and that during all the time he knew said negroes, he, the said Alexander, held them and exercised absolute control over them as their master, and that all of said negroes continued in his possession up to the time of his death.

The defendants, for the purpose of proving title to the negroes in their intestate, offered to prove, by William A. Quinn, that, on the 18th day of January 1847, he had in his hands, as deputy sheriff of Prince Georges county, a writ of *vendi. exponas,* which had issued out of the Court of Appeals, at the suit of *Magruder & Pratt vs. Alexander McKee & others,* and that negroes Charlotte, Silvey and Martha, (three of the negroes, and the mothers of the remaining negroes in controversy,) had been previously seized on a *fi. fa.,* issued in the same case; and that on the same 18th day of January 1847, the witness, as deputy sheriff, sold the said three negroes to Mr. Carroll (who said he bought them for Margaret McKee) for the sum of $700, and that it was her money. The defendants further offered to prove, by the same witness, that

he delivered said negroes to said Carroll, and that he signed the following receipt to Mrs. Margaret McKee for the purchase money.

"NOTTINGHAM, *January* 18*th*, 1847.

Received, of Mrs. Margaret McKee, seven hundred dollars in full, for the purchase money of negro woman Charlotte, Silvey and Martha, this day sold by me at public auction to said Margaret McKee, under a writ of *vendi. exponas,* issued from the Court of Appeals, at the suit of *C. C. Magruder & Thomas G. Pratt vs. Alexander McKee, John W. Harvey & Michael B. Carroll.* WILLIAM A. QUINN, Dep'ty Sh'ff."

And which receipt was proved to be signed by said Quinn.

But the counsel for the plaintiffs objected to the admissibility of said evidence, on the ground that the writ of execution alone could confer authority upon the sheriff to seize, take and sell property of the plaintiffs' intestate in this case, and that no seizure and sale made by him, could confer title upon the purchaser, unless he was authorized to make such seizure and sale by the writ spoken of by the witness, or the *fieri facias* antecedently issued in said case; and insisted that the said Quinn was incompetent to prove the issuance of said writs of *fieri facias* or *vendi.,* and that the receipt offered by the defendants, and signed by Quinn, is also incompetent to prove the issuing of said writs.

The court accordingly excluded the said testimony as incompetent to show title in the defendants' intestate to the negroes mentioned in said testimony, unless the executions under which said sale was supposed to be made is produced, or their absence accounted for.

To which opinion of the court, and to their excluding said evidence from the jury, on the ground that the said writ was not produced, or its absence accounted for, the said defendants, by their counsel, excepted.

And the verdict and judgment being for the plaintiffs, the defendants appealed to this court.

We concur in the ruling of the court below.

The case of *Giese vs. Thomas,* 7 *H. & J.,* 458, and *Sanderson's ex'crs vs. Marks,* 1 *H. & G.,* 252, are strictly

analogous to this case. The parol evidence and receipt of Quinn were improper testimony in themselves, however they might be considered, if accompanied by proof of the authority of the deputy sheriff to sell the negroes he professed to convey.

Thus affirming the judgment in favor of the *plaintiff*, we cannot approve of the suggestion of the appellants' counsel, that a *procedendo* should issue in this case.

In *Manning, Stimpson & Co., vs. Hays, 6th Maryland Reports*, 10, where there was an application for a *procedendo*, the court say: "Nothing of merit is disclosed to us by the record, by which we are to be governed, whatever may be the true state of the facts of the case. It was in the power of the parties at the trial to have availed themselves of the defectiveness of the notice of protest. Not having done it then, it is now too late." So in this case, the parties not having availed themselves of the testimony they might have produced at the trial, but failed to do so, it is now too late.

The Act of 1826, ch. 200, sec. 10, and the Act of 1830, ch. 186, according to our construction of them, give no power to this court to order a *procedendo* in a case like this, where the judgment is in favor of the plaintiff and that judgment affirmed, and the defendant appeals.

*Judgment affirmed.*

(Decided January 23rd, 1861.)